

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **FREDDIE HACKNEY, JR.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:07-CV-113-TH** |
| | § | **JURY** |
| **TEXAS DEPARTMENT OF CRIMINAL JUSTICE,** | § | |
| | § | |
| *Defendant.* | § | |

# MEMORANDUM OPINION REGARDING
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the *Defendant Texas Department of Criminal Justice's Renewed and Re-urged Motion for Summary Judgment* [Clerk's Docket No. 113]. Having considered the motion, the responsive submissions of the parties, the record and the applicable law, the Court is of the opinion that the motion should be granted. The Court's reasoning is set forth in this memorandum.

## I. BACKGROUND

Freddie Hackney, Jr. ("Hackney") works as a parole officer for the Texas Department of Criminal Justice ("TDCJ"). He has held this position for more than fifteen years, and has worked in district parole offices in Orange and Beaumont, Texas. During this time, Hackney claims he has been subjected to workplace discrimination because of his African-American race and his Jewish religion.

Hackney identifies a number of incidents that, he contends, evidence such racial and religious discrimination. The following (non-exclusive) list summarizes his grievances.

1. Hackney's former supervisor James Gossett, Jr. ("Gossett") denied Hackney's request for leave from work to celebrate Rosh Hashanah in October 2005. (Pl.'s Amend. Compl. at 4, ¶¶ 6.1-6.4).[1] However, Gossett granted certain other parole officers requests to take leave on Good Friday and Ash Wednesday. (*Id.*).

2. Gossett (who is white) allowed Hackney's coworkers, Molly Fore (who is also white) and Shanda McKenzie (who is black), to refer to Hackney as "Magilla Gorilla" and "Big Black Gorilla," terms that Hackney says insulted his race.[2] (Pl.'s Am. Compl. at 5, ¶ 7.1; Pl.'s Sur-Reply in Opposition to Def.'s Re-urged Mot. for Summ. J. Ex. 4).

3. Gossett awarded Hackney's coworker Garrett Gilliam (who is white) with a commendation and plaque recognizing his work in the aftermath of Hurricanes Katrina and Rita (in September and October 2005). Hackney's work during the same time was not recognized. (Pl.'s Am. Compl. at 5, ¶¶ 7.2-7.3).

4. Gossett "stole" Hackney's idea for a procedure used to document Louisiana parolees in Texas after Hurricane Katrina; an idea that eventually became official TDCJ policy. (Pl.'s Am. Compl. at 6, ¶ 7.4). Gossett took credit for the idea, while Hackney received no recognition or commendation. (*Id.* at ¶ 7.5).

5. In 2006, Hackney's coworker Molly Fore ("Fore") was not written-up for failure to prepare a violation report. (Pl.'s Am. Comp. at 6-7, ¶¶ 8.1-8.3). However, Hackney was subjected to a disciplinary hearing when he similarly failed to prepare a violation report. (*Id.* at ¶ 8.4).

6. Fore failed to complete case assignments, but was not disciplined. (Pl.'s Compl. at 8, ¶¶ 8.5-8.6). Hackney, however, was subjected to a disciplinary hearing, and found guilty on February 6, 2007 of "substandard duty performance" when he failed to log certain case information into TDCJ's computer system—a charge that Hackney still disputes. (*Id.* at ¶¶ 8.7-8.8). Hackney argues that he did in fact

---

[1] Gossett resigned from TDCJ on December 31, 2006.
[2] Magilla Gorilla is the main character from "The Magilla Gorilla Show," an animated series produced by Hanna-Barbera that aired on television in the 1960s. http://www.tv.com/magilla-gorilla/show/3728/summary.html.

log this information—but, the computer system failed to record it because TDCJ had supplied Hackney with defective hardware and software.

7. Gossett allowed Fore to withdraw from certain hostile or difficult case assignments, but did not permit Hackney to do so. (Pl.'s Am. Comp. at 9-10, ¶¶ 9.1-9.5).

8. On multiple occasions in 2006, Hackney requested that Fore address him by his name or rank when asking him a question; but Fore refused. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5-6). Hackney alleges that after one such refusal, Fore told Hackney that "the only thing wrong with [him] was that [he] was black." (Pl.'s Sur-Reply Opposing TDCJ's Mot. for Summ. J. Ex. 3, Hackney Aff.).

9. Gossett failed to adhere to a TDCJ safety policy that requires more than one parole officer to be present when parolees are in the office. (Pl.'s Am. Compl. at 10-12, ¶ 10.1). Rather, Gossett would regularly leave the building (and would permit other officers to leave) when Hackney was meeting with parolees— thereby leaving Hackney as the only parole officer in the building. (*Id.* at ¶¶ 10.1-10.7).

10. In 1995 (a decade before most of the foregoing incidents), the words, "U Talk Nigger U Die KKK," were spray-painted on the wall of a hallway in the Beaumont parole office. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5-6). Hackney believes that this threat was directed at him by one of his TDCJ coworkers. Although Hackney worked primarily from Orange parole office at the time, he worked regularly in the Beaumont office as well. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 2). Hackney contends that the perpetrator of this vandalism must have been one of his TDCJ coworkers because there were no signs of forced entry into the building, and because no one was ever prosecuted for the crime.

Based on these incidents, Hackney filed the instant lawsuit in 2007, asserting racial and religious discrimination claims under Title VII of the Civil Rights Act of 1964[3] against TDCJ and Gossett. The Court previously found that Gossett could not be individually liable under Title VII because he did not qualify as an "employer;" and, therefore, dismissed the claims him. *See Hackney v. Tex. Dep't of Criminal Justice*, No. 1:07-CV-733 (E.D. Tex. Filed Mar. 4, 2008)

---

[3] 42 U.S.C. §§ 2000e-2000e-17

(citing *Grant v. Lone Star Gas Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999)).[4]  This memorandum is concerned with the remaining Title VII claims against TDCJ.

Among these claims is Hackney's allegation that TDCJ violated his rights protected by the Fourth and Sixth Amendment to the United States Constitution by eavesdropping on telephone and computer communications between Hackney and his attorney, Roxie Lormand; and between Lormand and her legal assistant, Lillie Robinson.  Such constitutional claims are properly brought pursuant to 42 U.S.C. § 1983, a remedial statute that provides a cause of action for violations of substantive federal rights.  *See Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994); *see also Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 382 (1979).  However, Hackney avers that his eavesdropping claim is not brought under Section 1983; but, rather, under 42. U.S.C. § 2000e-3(a) as a Title VII retaliation claim. (Pl.'s Resp. to Def.'s Re-urged Mot. for Summ. J. at 3; Pl.'s Sur-reply to Def.'s Re-urged Mot. for Summ. J. at 2-3).  If that is the case, the Court is confused as to why Hackney made reference to the Fourth and Sixth Amendments in the first place.  A reference to constitutional rights is completely superfluous if the 'eavesdropping' claim is one pursued under Title VII.  Instead, Hackney's assertion appears to be evasive action taken in response to TDCJ's notice that Eleventh Amendment immunity bars suits for damages against a state agency.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981); *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1051, 1054 (5th Cir. 1998).  Nevertheless, with an eye towards the liberal notice pleading standards of the Federal Rules of

---

[4]Title VII only authorizes a private suit against an "employer."  It does not authorize suits against co-workers or supervisors in their individual capacities, even though such persons may have engaged in discriminatory conduct.  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999).

Civil Procedure, the Court will accept Hackney's contention and treat his eavesdropping allegations as a Title VII retaliation claim. *See* Fed. R. Civ. P. 8.

TDCJ now moves for summary judgment on all of Hackney's claims. For the reasons given below, the Court finds that summary judgment is appropriate.

## II. LEGAL PRINCIPLES

### A. Summary Judgment

Summary judgment is proper when, after viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp*., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. P. 56(C). The moving party has the burden of proving that these conditions exist. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). If the moving party establishes the absence of any genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conclusory allegations, unsubstantiated assertions, and mere scintillas of evidence do not satisfy this burden. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is proper where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

Rule 56(c) of the Federal Rules of Civil Procedure requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions and affidavits. FED. R. CIV. P. 56(c). But, the court is not obligated to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996). In reviewing the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Dickerson v. Bailey,* 336 F.3d 388, 394 (5th Cir. 2003). All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 468-69 (1992).

B. Title VII Overview

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2. It bans "both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, --U.S.--, 129 S. Ct. 2658, 2672 (2009); *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977)). Title VII's important purpose is to ensure that the workplace is an environment free of discrimination. *Ricci*, 129 S. Ct. at 2674. To further this purpose, Title VII authorizes persons who believe

themselves to be victims of unlawful discrimination to bring private enforcement causes of action after exhausting administrative remedies. 42 U.S.C. § 2000e-5(f)(1).

C. Exhaustion of Administrative Remedies

A precondition to filing a Title VII suit in federal district court is exhaustion of administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996)). Before instituting suit, aggrieved employees must first make a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and secure from the EEOC a "right-to-sue" letter. *Pacheco*, 448 F.3d at 787; *Taylor*, 296 F.3d at 378-79; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). Further, presenting one allegation to the EEOC does not necessarily empower the plaintiff to then file suit on other allegations. *See Pacheco*, 448 F.3d at 788. "[N]o issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Pacheco*, 448 F.3d at 488 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970). So, the court must determine whether each of the plaintiff's claims has been submitted to the EEOC. *See id.* In making this determination, the court should consider the actual statement given by the plaintiff in the administrative charge, and "the scope of the EEOC investigation which can reasonably be expected to grow out of [it]." *Pacheco*, 448 F.3d at 789 (quoting *Sanchez*, 431 F.2d 466).

D. Disparate Impact

Title VII's disparate-impact provisions target unintentional discrimination, "to rid the workplace of practices that are fair in form, but discriminatory in operation." *Ricci*, 129 S. Ct. at 2676 (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)) (internal quotations

omitted); *Pacheco*, 448 F.3d at 787. A plaintiff establishes a prima facie disparate-impact violation by demonstrating (1) that an employer has a facially neutral policy; (2) that in fact has a disproportionately adverse effect on a protected class of individuals. *Pacheco*, 448 F.3d at 791 (citing *Herbert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 2006)); *see Ricci*, 129 S. Ct. at 2673 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). Proof of discriminatory motive is not required. *Pacheco*, 448 F.3d at 787 (citing *Herbert*, 682 F.2d at 1116). If the plaintiff makes a prima facie showing, the employer then has the burden to show that the practice is "job related for the position in question and consistent with business necessity." *Ricci*, 129 S. Ct. at 2673. Upon this showing, the burden reverts to the plaintiff, who must then show that the employer "refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Id.* (citing 42 U.S.C. §§ 2003-2(k)(1)(A)(ii) and (C)).

E. <u>Disparate Treatment</u>

Disparate-treatment cases present "the most easily understood type of discrimination." *Ricci*, 129 S. Ct. at 2672 (quoting *Teamsters v. United States*, 431 U.S. at 335 n.15). Disparate-treatment discrimination occurs when an employer intentionally treats an employee worse than others based on the employee's race, color, religion, sex or national origin. *Pacheco*, 448 F.3d 783.

Plaintiffs may prove Title VII disparate-treatment claims either by direct or circumstantial evidence. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). But, in most cases, plaintiffs must rely on circumstantial evidence since the employer usually avoids explicitly stating that a discriminatory purpose motivated its actions. *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). That is the case here.

When a plaintiff relies on circumstantial evidence, courts use the "*McDonnell Douglas test*" that involves shifting burdens of production. *McDonnell Douglas Corp.*, 411 U.S. at 802-04; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (describing the Fifth Circuit's modified *McDonnell Douglas* approach to employment discrimination cases where mixed-motive analysis might apply). Under this test, a plaintiff must first establish a prima facie case for his Title VII cause of action. *McCoy*, 492 F.3d at 556 (citing *McDonnell Douglas*, 411 U.S. at 802)). "[T]he precise articulation of the elements of a prima facie case will vary according to the facts of the case and the nature of the claim." *Washington v. Veneman*, 109 F. App'x 685, 687 (5th Cir. 2004). If the plaintiff makes this showing, the burden then shifts to the defendant to provide a legitimate, non-discriminatory or non-retaliatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802-04; *McCoy*, 492 F.3d at 557 (applying *McDonnell Douglas* test to retaliation case); *Hayatdavoudi v. Univ. of La. Sys. Bd. of Trustees*, No. 00-30389, 2000 WL 1835143, at *3 (5th Cir. 2000) (applying *McDonnell Douglas* test to hostile work environment case). The defendant's burden is simply one of production, not persuasion, and involves no credibility assessment. *McCoy*, 492 F.3d at 557 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). When the defendant employer thus rebuts the prima facie case, the burden then shifts back to the plaintiff to show that either: (1) the reason provided is not true and is actually a pretext for the prohibited discrimination or retaliation, or (2) the reason provided is true, but is only one of the reasons for the conduct, and another reason is the employee's protected characteristic. *McDonnell Douglas Corp.*, 411 U.S. at 802-04; *Keelan*, 407 F.3d at 341; *see McCoy*, 492 F.3d at 557.

## III. DISCUSSION

Hackney alleges both disparate-impact and disparate-treatment claims under a variety of discrimination theories. The Court addresses each of his claims below.

### A. Disparate Impact Claims

First, the Court finds that Hackney cannot pursue disparate-impact claims because he failed to raise any such claims in his EEOC charge. The Court has considered the administrative charge filed with the EEOC and the scope of the investigation that the EEOC could be expected to undertake in response. Having done so, the Court concludes that a disparate-impact investigation could not reasonably have been expected to grow out of Hackney's charge because: (1) it facially alleged disparate treatment; (2) it did not identify any TDCJ employment policy or practice; and (3) it alleged only past incidents of disparate treatment. *See Pacheco*, 448 F.3d at 792. As such, Hackney cannot pursue a disparate-impact claim because he did not first exhaust his administrative remedies before the EEOC. *Id.* at 787-792.

However, assuming *arguendo* that Hackney satisfied all administrative prerequisites, his disparate impact claims still fail because he has not alleged the prima facie elements of such a claim. In fact, Hackney's allegations suggest that he misunderstands the nature of a disparate-impact claim. As stated above, Title VII's disparate-impact provisions address "employment practices or policies that are facially neutral in their treatment of [groups protected by Title VII], but, in fact, have a disproportionately adverse effect on such a protected group." *Pacheco*, 448 F.3d at 787. Hackney never mentions a facially neutral practice or policy of TDCJ. Instead, he repeatedly states in his complaint that he was "subjected to unequal treatment" which "had a disparate impact" on him. (Pl.'s Am. Compl. at ¶¶ 7.3, 7.5, 8.8, 9.5, and 10.7). Plainly, this is an

allegation of disparate treatment misusing a term of art. *See Pacheco*, 448 F.3d at 792 n.12 (noting that all of the plaintiff's complaints alleged intentional discrimination, not disparate-impact discrimination).

A plaintiff establishes a prima facie disparate-impact violation by demonstrating (1) that an employer has a facially neutral policy; (2) that in fact has a disproportionately adverse effect on a protected class of individuals. *Pacheco*, 448 F.3d at 791 (citing *Herbert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 2006)). Hackney has not alleged that TDCJ had a facially neutral policy or practice that impacted him. Therefore, because he has not even alleged the elements of a prima facie violation, his disparate-impact claims must fail.

B. Disparate Treatment Claims

(1) Religious Discrimination

Hackney contends that he has experienced workplace discrimination because he is Jewish. Under the *McDonnell Douglas* test, it is his burden to demonstrate a prima facie case of such religious discrimination.

To establish a prima facie case of religious discrimination under Title VII, Hackney must prove that: (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) his employer was informed of that belief; and (3) he was disciplined for failing to comply with the conflicting employment requirement. *Jenkins v. Louisiana*, 874 F.2d 992, 995 (5th Cir. 1989); *Ellis v. Principi*, 246 F. App'x 867, 872 (5th Cir. 2007) (per curium) (citing *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000); *Turpen v. Missouri K.T.R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984)); *see Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 500

n.9 (5th Cir. 2001). Title VII obligates an employer "to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977). So, if Hackney makes a prima facie showing, the burden shifts to TDCJ to show that it was unable reasonably to accommodate Hackney's religious needs without undue hardship. *Jenkins,* 874 F.2d at 995 (citing *Turpen v. Missouri K. T. R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984)). However, the analysis here does not reach that burden shifting. Hackney fails to establish a prima facie claim.

Hackney's most overt charge of religious discrimination is the allegation that his supervisor, Gossett, denied his request for leave from work to celebrate Rosh Hashanah on October 4th and October 5th, 2005. This charge fails to state a prima facie religious discrimination claim for multiple reasons. First, Hackney admits that at the time of his request, Gossett was not aware that Hackney had recently begun investigating the Jewish faith. (Def.'s Reurged Mot. for Summ. J. Ex. 1-2, Hackney Depo. at 173-78). Second, assuming that the submission of the request for leave on a Jewish holiday is enough to inform Gossett of Hackney's religious beliefs, Hackney was never disciplined for failing to comply with a work requirement. In fact, although Hackney did not work on October 4, 2005, Gossett retroactively approved his leave because of Hurricane Rita (which made landfall in Southeast Texas on September 24, 2005). For these reasons, viewing the facts in the light most favorable to Hackney, he has not established a prima facie religious-discrimination claim based on Gossett's denial of leave to celebrate Rosh Hashanah.

Hackney's complaint also contains numerous conclusory allegations of religious discrimination. For example, Hackney alleges that Gossett took credit for Hackney's idea regarding documentation of Louisiana parolees in Texas after Hurricane Rita. Without any

explanation, he asserts that Gossett's actions were motivated "in whole or in part, by Plaintiff's Jewish Religion." Such *ipse dixit* assertions are deficient. "[C]onclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting *Douglass v. U.S. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)).

As such, Hackney does not carry his burden to establish a prima facie case of religious discrimination. Therefore, all claims based on that theory must fail.

(2) Race Discrimination

Hackney next contends that he was subjected racial discrimination at work because he is African-American.

In order to establish a prima facie case of race discrimination, Hackney must provide evidence that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action by his employer; and (4) others similarly situated were treated more favorably. *See McCoy v. City of Shreveport*, 459 F.3d 551, 556 (5th Cir. 2007); *Okoye v. Univ. of Tex. Houston Health Sci. Center*, 245 F.3d 507, 512-13 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999); and citing *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)).

It is undisputed that Hackney is black, and undisputed that he is qualified for his position. Indeed, he still works as a TDCJ parole officer. But, Hackney's claim trips on the third step of the analysis because he does not allege that he has suffered an adverse employment action.

"In [the Fifth Circuit], only 'ultimate employment decisions' qualify as the adverse employment actions necessary to establish a prima facie case of discrimination." *Washington v. Veneman*, 109 F. App'x 685, 689 (5th Cir. 2004) (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)).[5] Ultimate employment decisions include "hiring, granting leave, discharging, promoting and compensating." *Hart v. Life Care Center of Plano*, 243 F. App'x 816, 818 (5th Cir. 2007) (quoting *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)).

According to Fifth Circuit precedent, none of the incidents of which Hackney complains constitute ultimate employment decisions. *See Ellis*, 246 F. App'x at 870; *Washington*, 109 F. App'x at 689 (citing *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (cataloguing Fifth Circuit cases on ultimate employment actions)). For example, Hackney claims that he was denied recognition for his work during Hurricanes Katrina and Rita, and denied credit for an idea about documenting Louisiana parolees. However, denying a performance award is not an ultimate employment decision. *Id.* Hackney also claims that he was subjected to disciplinary hearings, one of which resulted in a finding that Hackney was guilty of "substandard duty performance." But, undeserved poor performance ratings do not qualify as an ultimate employment decision either. *Washington*, 109 F. App'x at 689. Likewise, Hackney's contention that he was given less favorable case assignments than his coworker, Fore, does not allege an ultimate employment decision. *See Ellis*, 246 F. App'x at 870.

---

[5] Historically, the Fifth Circuit applied this 'ultimate employment decision' standard to all Title VII claims. *McCoy v. Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). However, in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006) the Supreme Court abrogated this approach in the retaliation context. *Id.*

Because Hackney has not alleged that he suffered an adverse employment action, he cannot establish a prima facie case of race discrimination. Accordingly, his race discrimination claims must fail.

(3) Hostile Work Environment

Hackney's next claim is that he was subjected to a hostile work environment; a claim that requires him to establish the following prima facie elements: (1) he is a member of a protected class, (2) he suffered unwelcome harassment, (3) the harassment was based on his membership in the protected class, (4) the harassment affected a term, condition, or privilege of his employment, and (5) the employer knew or should have know of the harassment and failed to take prompt remedial action. *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007); *Ellis*, 246 F. App'x at 871 (citing *Frank v. Xerox Corp.,* 347 F.3d 130, 138 (5th Cir. 2003)); *Mosley v. Marion County, Miss.*, 111 F. App'x 726, 727 (5th Cir. 2004) (per curium); *Johnson v. TCB Constr. Co. Inc.*, No. 08-60472, 2009 U.S. App. LEXIS 13617, at *10, 2009 WL 1766519 (5th Cir. June 23, 2009) (per curium) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Further, Hackney must subjectively perceive the harassment as sufficiently severe or pervasive, and his subjective perception must be objectively reasonable. *Frank*, 347 F.3d at 138 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). To determine whether a hostile work environment existed, the court must consider the totality of the circumstances, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *WC&M Enterprises, Inc.*, 496 F.3d at 399 (citing *Harris*, 510 U.S. at 21-22); *Johnson*, 2009 U.S. App. LEXIS 13167, at *10 (quoting *Harris*, 510 U.S. at 23); *Frank*, 347 F.3d at 138.

The United States Court of Appeals for the Fifth Circuit has explained that a hostile work environment can be created by harassment that is severe *or* harassment that is pervasive:

> An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment. The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of "pervasive, thereby altering the terms, conditions or privileges of employment such that a hostile work environment exists. Thus, the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.

*Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (internal citations and quotations omitted).

In plain terms, the court must look to "whether the complained of conduct undermined the plaintiff's workplace competence." *Lauderdale*, 512 F.3d at 163 (quoting *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998)). "The mere utterance of an epithet which engenders offensive feelings is not enough" to create a hostile work environment. *Johnson*, 2009 U.S. App. LEXIS 13167, at *11 (quoting *Harris*, 510 U.S. at 21) (internal quotation marks and ellipsis omitted). Title VII is not a "general civility code, and simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Lauderdale*, 512 F.3d at 163 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (citations and quotations omitted).

Here, considering the totality of the circumstances, and viewing Hackney's allegations in the most favorable light, the Court finds that Hackney has not presented evidence sufficient to create a fact issue as to whether the harassment he suffered was so severe or pervasive as to alter a condition of his employment.

The most severe harassment cited by Hackney occurred in 1995, when the words, "U Talk Nigger U Die KKK," were spray-painted on a wall in the Beaumont parole office; a threat that Hackney asserts was directed at him by one of his TDCJ coworkers.  Hackney concludes that the perpetrator was "obviously" a TDCJ employee because there were no signs of forced entry into the building, and because no one was ever prosecuted for the crime.  That conclusion is not obvious to the Court.  Hackney has not submitted any evidence suggesting that a TDCJ employee was behind this threat; nor any evidence suggesting that the threat was directed at him.  His claim is simply speculation.  Further, the spray painting incident occurred during Hackney's first six months as a TDCJ employee.  Fifteen years later, he is still employed by TDCJ.  While the passage of time does not change the serious, foul nature of the threat, the event's temporal remoteness does suggests that its affect on Hackney was not so sever as to affect a condition of his employment.  In fact, Hackney has not even alleged that he subjectively perceived the threat in a way that negatively impacted his work performance.

In addition, Hackney claims that his coworkers, Fore and McKenzie, called him "Magilla Gorilla" or "Big Black Gorilla," derogatory references to his race.  However, Hackney admits that he was never present when these terms were used.  (Def.'s Reurged Mot. for Summ. J. Ex. 1-2, Hackney Depo. at 163-64).  He claims that one of his coworkers, Allison Pitre (who is black) informed him that McKenzie (who is also black) had called him Magilla Gorilla.  *Id.* Hackney also alleges that, by chance, a machine he used to record meetings with parolees recorded a conversation between Fore and McKenzie during which they referred to him as Magilla Gorilla.  While this tape has not been produced, the Court will assume that such a conversation occurred.  Nevertheless, these events are isolated, not pervasive.  Further, given that these derogatory names were never used in Hackney's presence, the Court cannot conclude that

their use was so severe as to create a hostile work environment. The Court recognizes that Hackney subjectively perceived these names as racial slurs, and finds that his perception is objectively reasonable. However, it is not objectively reasonable to perceive the isolated and clandestine use of these names as severe or pervasive enough to create a hostile work environment. *See Harris*, 510 U.S. at 21 (the utterance of a racial slur or epithet does not create a hostile work environment); *Faragher*, 524 U.S. at 788; *Lauderdale*, 512 F.3d at 163; *Ellis*, 246 F. App'x at 871; *Johnson v. TCB Constr. Co., Inc.*, 2009 U.S. App. LEXIS 13617, at *11-12 (no hostile work environment where supervisor (in a repulsive but isolated incident) said that plaintiff was "like a damn nigger;" and supervisor's use of the term "nigger" at other times was outside plaintiff's presence).

The Court has considered the foregoing incidents alongside all of Hackney's other allegations, including but not limited to, his disciplinary hearings, his assignment to difficult casework, Fore's refusal to address Hackney by his name and Gossett's failure to comply with TDCJ safety policies. Having done so, the totality of the circumstances does not suggest that the alleged discriminatory conduct was so severe or pervasive that it interfered with Hackney's work performance. *See Harris*, 510 U.S. at 21; *Faragher*, 524 U.S. at 788; *Lauderdale*, 512 F.3d at 163; *Ellis*, 246 F. App'x at 871; *Johnson v. TCB Constr. Co., Inc.*, 2009 U.S. App. LEXIS 13617, at *11-12; *Cf. WC&M Enterprises, Inc.*, 496 F.3d 393 (finding fact issues existed regarding a hostile work environment where plaintiff was subjected to verbal harassment on a regular basis for approximately one year). Therefore, Hackney fails to demonstrate a prima facie hostile work environment.

(4) Retaliation

Finally, Hackney alleges that TDCJ retaliated against him for filing this lawsuit by eavesdropping on communications between him, his attorney and his attorney's legal assistant.

In establishing a prima facie retaliation case, Hackney has the burden to show that (1) he engaged in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 459 F.3d 551, 556-57 (5th Cir. 2007); *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *Washington*, 109 F. App'x at 688 (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191-92 (5th Cir. 2001); *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)); *Mosley v. Marion County, Miss.*, 111 F. App'x 726, 728 (5th Cir. 2004) (citing *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000)); *Johnson*, 2009 U.S. App. LEXIS 13617, at *12 (quoting *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007)).

The United States Supreme Court has established that "the standard for retaliation is broader than for discrimination, in that such actions are not limited to tangible employment acts." *Johnson*, 2009 U.S. App. LEXIS 13617, at *13 (citing *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). Instead, an adverse employment action in the retaliation context is one that "might have dissuaded a reasonable worker from making…a charge of discrimination." *McCoy*, 459 F.3d at 559 (quoting *White*, 548 U.S. at 68).

Assuming *arguendo* that eavesdropping can qualify as such an adverse employment action, Hackney fails to provide any competent evidence tending to show that TDCJ actually eavesdropped on communications between him and his attorney, Roxie Lormand; or between Lormand and her legal assistant, Lillie Robinson. In support of his eavesdropping allegations

Hackney submits an affidavit from Robinson, stating that about one month after TDCJ was served with process in this action, telephone caller-identification began to display calls from her home telephone number with the name "Texas;" whereas, previously, the telephone number was displayed with her last name. However, Hackney makes no attempt to explain how this occurrence is probative of eavesdropping. He offers no expert opinion, no technical information, no anecdotal comparisons, nor any other shred of evidence to suggest that the appearance of "Texas" on caller-identification is indicative of eavesdropping by a state actor. Instead, he simply asserts that because called-identification associated "Texas" with Robinson's home phone number, it is logical to conclude the TDCJ had wiretapped Robinson's phone, Roxie Lormand's phone, and Hackney's phone—and then intercepted his telephone and electronic communications. The Court cannot accept this assertion. As previously stated, "conclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d at 269. Further, the Court is only required to make *reasonable* inferences which can be drawn from the evidence in favor of Hackney. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 468-69 (1992). The Court is not capable of the inferential leaps that Hackney's eavesdropping allegations demand.

Accordingly, the Court finds that Hackney has not demonstrated that TDCJ took an adverse employment action against him. Therefore, his retaliation claim must fail because he cannot establish its prima facie elements.

## IV. Conclusion

Based on the foregoing, the Court concludes that no genuine issues of material fact are presented by Hackney's claims. Accordingly, the *Defendant Texas Department of Criminal Justice's Renewed and Re-urged Motion for Summary Judgment* [Clerk's Docket No. 113] should be granted, and all claims asserted by Hackney dismissed. An order in conformity with this memorandum opinion will be contemporaneously entered.

**SIGNED** this the 4 day of **August, 2009.**

Thad Heartfield
United States District Judge